# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Hayes, et al | Civil Action No. 18-01102 |
| Versus | Judge Robert R. Summerhays |
| F&M Pharmacists Specialty Pharmacy, Inc et al | Magistrate Judge Carol B Whitehurst |

## REPORT AND RECOMMENDATION

Before the Court on assignment from the district judge, is a Motion to Remand filed by Plaintiffs, Ron Addison Hayes ("Hayes" or "Plaintiff"), individually and on behalf of his three minor children, A. Hayes, C. Hayes and L. Hayes, as well as Brandie Hayes (collectively "Plaintiffs") [Rec. Doc. 9] and Defendants, F&M Pharmacists Specialty Pharmacy. Inc., Pharmacists Mutual Insurance Company. David McCoy and Healthcare Providers Service Organization's (collectively referred to as "F&M Pharmacists"') Opposition thereto [Rec. Doc. 12]. For the reasons that follow, the Court will recommend that Plaintiffs' motion be granted.

### Factual and Procedural Background

Plaintiffs filed this action in the Fifteenth Judicial District Court, Lafayette Parish, on January 27, 2016, naming F & M Specialty Pharmacy Inc. as a defendant. *R. 1-2.* On August 2, 2016, Plaintiffs filed a First Supplemental and Amending Petition adding Defendant Pharmacists Mutual Insurance Company. *R. 16.* On

March 8, 2017, Plaintiffs filed a Second Supplemental and Amending Petition adding Healthcare Providers Service Organization and David McCoy as defendants. *R. 18*. Plaintiffs did not amend any paragraph in the original Petition as to the merits of their case; therefore, the Petition and both Amended Petitions contain the following allegations.

Hayes had a double lung transplant at Ochsner Medical Center on November 6, 2014 due to advanced cystic fibrosis. *R. 12-2, p. 2.* On or about February 2, 2015, Defendants "negligently filled at least one prescription of Prograf and/or Tacrolimus[1] for [Hayes] which was delivered to [Hayes] at his home in Lafayette, Louisiana. *R.1-2, ¶ 1.* Hayes took the prescription(s) as directed. *Id.* Later, Hayes learned that the prescription(s) was 10 times the prescribed dosage─5 mg instead of 0.5 mg. *Id.* Plaintiffs further alleged that, "[g]iven that this medication was needed for [Hayes] as he recovered from lung transplant surgery, the effects of taking the wrong dosage has caused significant injury to Petitioners." *Id.* Plaintiffs alleged that as a result of the high dosage Hayes suffered "serious and permanent injuries that resulted in general and special damages including but not limited to past and future physical and mental pain and suffering, past and future loss of earnings and loss of

---

[1] Tacrolimus, previously known as FK506, is the active ingredient in Prograf. Prograf is the brand name for Tacrolimus, the generic name. /www.rxlist.com/prograf-drug.htm. "Tacrolimus is used with other medications to prevent rejection of a kidney, heart, or liver transplant. This medication belongs to a class of drugs known as immunosuppressants. It works by weakening your body's defense system (immune system) to help your body accept the new organ as if it were your own. /www.webmd.com/drugs/2/drug-10096/prograf-oral/details.

earning capacity, lost chance of survival, healing and/or recovery, that necessitated that he incur past and future medical expenses, past and future expenses for his personal care and services, past and future disability, past and future disfigurement, past and future loss of enjoyment of life, and any and all other damages available under the law, all of which entitle him to recover a sum reasonable in the premises." *Id. at ¶ 5.* Petitioners further alleged that Hayes' wife and children suffered a loss of consortium, companionship, society and support as a result of Defendants' negligence. *Id. at ¶6.* Petitioners alleged that they were entitled to punitive damages because Defendants' actions constituted "gross negligence or willful or wanton misconduct." *Id. at ¶ 8.* Finally, Petitioners stated: "At this time, it is not believed that total damages for petitioners exceed $75,000.00 at this time, exclusive of interest and costs. Plaintiffs reserve their right to amend this Petition as more facts are known." *Id. at ¶ 9.*

Defendants removed this action on August 27, 2018. *R. 1.* In their Notice of Removal Defendants represented that on "August 1, 2018, Plaintiff's counsel [] sent a settlement demand in which for the first time he estimated the plaintiff's damages to be $9,500,000.00." *R. 1, p. 3; R. 1-5.* They contended that, while Defendants removed this action over one year after it was filed, "removal is timely under 28 U.S.C. § 1446 (b) as it is being filed within thirty (30) days after receipt by defendant through service or otherwise of an 'other paper' from which it may first be

3

ascertained that this case is one which is removable." *R. 1, p. 4*. Defendants further contended that Plaintiff acted in bad faith by concealing the actual amount of damages in order to prevent Defendants from removing the action and manipulate the forum. *Id.*

Plaintiffs filed the instant motion to remand claiming that Defendants improperly removed the action for lack of timeliness. Plaintiffs rely on the second paragraph of 28 U.S.C. § 1446(b), which establishes the procedure for removal of actions that were not initially removable, but subsequently become removable. That provision provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that **a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action**.

28 U.S.C. § 1446(b) (emphasis supplied). Plaintiffs claim that removal is untimely because more than one year elapsed between the filing of his petition and Defendants' notice of removal.

Defendants oppose Plaintiffs' motion maintaining that Plaintiffs acted in bad faith by concealing the actual amount of damages in order to prevent Defendants from removing the action. Defendants contend, "[f]rom the inception of this lawsuit,

4

plaintiffs were aware that damages in excess of $75,000 would be sought, but engaged in a pattern of deception to remain in state court." *R. 12, p. 7.*

## Law and Analysis

As a general proposition, cases that are not initially removable, but subsequently become removable, may not be removed more than one year after the commencement of the action. *Johnson v. Heublein, Inc.*, 227 F.3d 236, 241 (5th Cir.2000) ("The one-year limitation on removals applies only to the second paragraph of [§ 1446(b)], i.e. only to cases that are not initially removable); *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 389 (5th Cir.2000) ("We have clearly held that the 'except' clause applies only to cases governed by the second paragraph of section 1446(b)."). In Louisiana, the one-year time limit runs from the date the lawsuit is filed. *See* La.C.C.P. art. 421; *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 885 (5th Cir.1993). This case commenced on January 27, 2016, and was removed on August 27, 2018, more than one year after commencement. Thus, removal is untimely unless an equitable estoppel exception to the one-year time limit applies.

The "conduct of the parties" is considered to determine whether "it is equitable to strictly apply the one-year limit" under the rule recognized by the Fifth Circuit in *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 426 (5th 2003). The *Tedford* rule permits equitable tolling of deadlines only where the facts demonstrate that "a plaintiff has attempted to manipulate the statutory rules for determining

5

federal removal jurisdiction, thereby preventing the defendant from exercising its rights." *Tedford*, 327 F.3d at 427–29. "Courts have narrowly drawn this equitable exception by requiring clear evidence rather than mere suspicion of forum manipulation." *Space Maker Designs, Inc. v. Steel King Indus., Inc*., 2010 WL 2680098, at *2 (N.D.Tex. July 6, 2010). "[M]erely suspicious behavior is not enough to demonstrate bad faith or forum manipulation." *Peres v. JPMorgan Chase Bank*, 2007 WL 1944376, at *3 (N.D.Tex. June 19, 2007).

In their motion, Plaintiffs contend that while Defendants received "thousands of pages of certified medical records from January and July of 2017," they did not forward the records to Plaintiffs until July 11, 2018. *R. 9-1*. They state that the records confirmed that Hayes' renal failure complications stem from the overdose of Prograf by F&M Pharmacy. In particular they state that "[s]everal 2015 Ochsner notes reference the Prograf overdose and 'renal insufficiency due to Prograf toxicity." *Id.* Following receipt of the Ochsner records in July, Plaintiffs state they requested that Hayes' treating physician, Dr. Anthony P. Blalock of Acadiana Renal Physicians, review the records and provide a written report concerning Hayes' injuries and treatment related to the Prograf overdose. *R. 1-5*. Dr. Blalock submitted his report on August 1, 2018. In his report Dr. Blalock noted that Hayes was suffering and would continue to suffer from Stage III and Stage IV chronic kidney disease related to the Prograf overdose. Plaintiffs represent that they submitted an

6

updated settlement demand to Defendants the same day they received Dr. Blalock's report. *R. 9-1, p. 4.* Thus Plaintiffs assert, "[e]veryone in this case knew that Ron Hayes was having significant problems related to Prograf toxicity (based on the Ochsner and Blalock records received earlier this year by F&M Pharmacists)" and "there was absolutely no concealment of damages or bad faith." *Id.*

In support of their position, Defendants cite Plaintiff's medical records of Dr. Dwayne Brown, pulmonologist, who examined Plaintiff on February 25, 2015. Dr. Brown noted that the examining physician at Ochsner, Dr. Rampolla, indicated that Plaintiff's "Prograf levels were very high, about five times expected, and his creatinine was up to 2.1." He further indicated Plaintiff should return in six weeks. *R. 12-2.* Defendants further cite Plaintiff's medical records from Ochsner which indicated he was hospitalized from February 27 through March 3, 2015 due to pneumonia and fever. *R. 12-3.* On March 2, 2015, Dr. Kendra J. McAnally's Progress Notes regarding Hayes indicated that in addition to "CKD (chronic kidney disease) state 3, GFR 30-59 ml/min", Hayes had "Acute kidney injury related to prograf induced nephropathy. He is at baseline. Continue to monitor and give IVF prn." *R. 12-4.*

Defendants argue that the foregoing medical records establish that application of equitable tolling is appropriate. The Court disagrees. These examinations and tests were performed soon after Hayes' transplant and within the same month that he

7

began taking the Prograf. It is within the Court's own knowledge and experience that such acute symptoms and test results may be expected to occur after an organ transplant. Moreover, Hayes was released on March 3, 2015.

As to Plaintiffs' petition, Defendants first state that the statement of injuries, "serious and permanent injuries that resulted in … physical and mental pain and suffering, physical and mental pain and suffering, past and future loss of earnings and loss of earning capacity, lost chance of survival, healing and/or recovery, that necessitated that he incur past and future medical expenses, past and future expenses for his personal care and services, past and future disability, past and future disfigurement, past and future loss of enjoyment of life," *R. 1, ¶ 5*, "are sufficient to facially demonstrate and satisfy the amount in controversy statutorily required for federal diversity jurisdiction." Defendants further state, however, that rather than remove the case based on the facially apparent amount in controversy, they relied on Plaintiffs' inclusion of the statement that "it is not believed that total damages for petitioners exceed $75,000 at this time." *Id. at ¶ 9*. They contend that this statement "can only be seen as intent to lull defendants into a false state of security regarding the amount in controversy required for removal." *R. 12, p. 9*. The Court is perplexed by Defendants' reasoning. First Defendants contend that it is "facially apparent" from the allegations in the petition that jurisdictional amount was satisfied, but then blame Plaintiffs' statement that he **believed** damages did not exceed $75,000 as the

reason they failed to remove the case, stating that such a statement can only be seen as "*intent to lull*" Defendants into not removing the case.

Under *St. Paul Reinsurance Co., Ltd. v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir.1998), the removing defendants can satisfy their burden as to jurisdictional amount by demonstrating that it is facially apparent the plaintiff's claims are likely above $75,000. Certainly, if Defendants believed it was apparent on the face of Plaintiff's petition that this case was worth more than $75,000, they would not have waited over two years to file a notice of removal. Also, Plaintiff's statement that "it is not believed that Plaintiff's damages exceed $75,000" was in satisfaction of La. C.C.P. Art. 893, which requires that the plaintiff's petition include "the lack of jurisdiction of federal courts due to insufficiency of damages." La. C.C.P. Art. 893. "[A] general allegation that a plaintiff's claims are above or below the federal jurisdictional requirement, made in accordance with Article 893(A)(1), is not dispositive of whether the amount in controversy requirement is met. This is because these general allegations will not be binding on [a plaintiff's] recovery under Louisiana law." *McCord v. ASI Lloyds/ASI Underwriters*, 2013 WL 1196671, at *2 (E.D. La. Mar. 22, 2013. The Court finds Defendants' assertion that Plaintiffs' statement was "subterfuge" which prevented their filing of a notice of removal to be disingenuous.

Finally, Defendants contend that Plaintiffs have deliberately delayed discovery effort throughout this case. They complain that Plaintiffs failed to completely respond to their April 5, 2016 Interrogatories and Requests for Production until December 13, 2016, and then objected to many as "Premature." In particular, they contend that discovery related to medical expenses were answered, "at this time medical expenses are being calculated and will be supplemented on receipt." Defendants further state that on March 7, 2018, they requested that Plaintiffs supplement their initial discovery responses, but Plaintiffs failed to do so. Correspondence between trial counsel on July 9, 2018, provides that Plaintiffs stated they were waiting for the medical records from Dr. Blalock to determine long-term effects.

Defendants assert that Plaintiffs' actions of willful disregard of and refusal to learn the facts when available and at hand constituted "willful ignorance." They argue that Plaintiffs "needed Dr. Blalock's report for a settlement demand but not for a jurisdictional amount." *Id. at p. 10.* They further state, "[h]ad Plaintiffs exercised due diligence and obtained the medical records, they would have seen an Ochsner bill from the admission of February 27, 2015 through March 3, 2015, for $42,165.73." *Id. at p. 11*. Defendants' argument is all about **Plaintiffs' obligation** to prove jurisdictional amount in controversy. But Plaintiffs had no such obligation. Only Defendants had the burden of proving that this Court had jurisdiction over this

10

matter and that removal was proper. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014).

As to their allegations that Plaintiffs failed to respond to their interrogatories related to medical records, except for one correspondence the record does not indicate that Defendants actively pursued Plaintiffs' responses, e.g. no motion was filed with the court. Rather, Defendants stated that they corresponded with counsel for Plaintiffs requesting the list of medical expenses "so that Defendants could evaluate the matter and work towards a resolution." *R. 9-8*. The content of this correspondence indicating that the medical expenses were needed for settlement negotiations, provides the reasoning for Plaintiffs' actions of securing Dr. Blalock's report related to Plaintiffs' expenses and his diagnosis. Further, Defendants do not deny that they were in possession of Plaintiff's certified medical records from January and July, 2017. As the removing party, it was Defendants' obligation to use the information in Plaintiff's medical records to establish jurisdictional amount. *See e.g. St. Paul Reinsurance*, 134 F.3d at 1253.

Plaintiffs cite two cases, *Foster v. Landon*. 2004 WL 2496216 (E.D.La. 11/4/2004) and *Monk v. Werhane Enterprises. Ltd*., 2006 WL 3918395 (E.D.La. 11/27/2006), in support of their position that the Court should not find equitable tolling appropriate based on Defendants' assertion that Plaintiffs' manipulated the forum by alleging less than the federal jurisdictional amount when the plaintiff's

11

claim was actually for more than the jurisdictional amount required for federal subject matter jurisdiction. Defendants contend that both cases are distinguishable from this case because in each the extent of the plaintiff's medical condition was not known initially and became symptomatic as time progressed. They argue that in this case, "Hayes knew as early as February 28, 2015, prior to filing suit, that the alleged negligence had impaired his renal function with significant results."

In both *Foster* and *Monk* the plaintiff filed suit in state court expressly stating in his petition that his/her claims were not worth $75,000. After the one year period had passed both plaintiffs changed the value of the quantum of the case. Upon removal to federal court the district court in each case found the plaintiff's actions did not present an egregious clear pattern of forum manipulation, and granted the order to remand. In particular, the *Foster* court refused to engage in speculation as to whether the plaintiff had purposely waited beyond the one year even though he found the actions "suspicious." The Foster court relied on the Fifth Circuit's reasoning in *Tedford* holding that "the record in this case does not present the egregious, clear pattern of forum manipulation" as in *Tedford*. *Foster*, 2004 WL 2496216, at *2. The court stated, "this Court must balance the exception articulated in *Tedford* with the general rule that removal jurisdiction is to be strictly construed, as its application 'deprives a state court of a case properly before it and thereby

implicates important federalism concerns.' " *Id.* (citing *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir.1997)).

As the Court has determined in the foregoing, Defendants cannot blame Plaintiffs for failure to inform them that this case met the amount in controversy for federal subject matter jurisdiction. That burden was clearly on Defendants. While Defendants do not contradict that they had Plaintiff's medical records at least as early as January 2017, they claim they did not know the actual value of this case until Plaintiffs presented Dr. Blalock's report for Defendants "to evaluate" and the parties to "work towards a resolution." The Court cannot find that Defendants' failure to remove this case timely was caused by Plaintiffs' actions.

## Conclusion

For the foregoing reasons, the Court recommends that the Motion to Remand filed by Plaintiffs, Ron Addison Hayes, individually and on behalf of his three minor children, A. Hayes, C. Hayes and L. Hayes, as well as Brandie Hayes (collectively "Plaintiffs") [Rec. Doc. 9] be GRANTED and this matter REMANDED to the Fifteenth Judicial District Court, Parish of Lafayette, State of Louisiana.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** this 5th day of November, 2018.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE